Good morning, this is Jesse Wilkinson, counsel for the appellants. May it please the court? Proceed. This case involves an unusual set of facts that are very tragic, involving the murder of the appellant's daughter, wherein her remains were discovered by Jacksonville law enforcement and provided to the medical examiner's office. The medical examiner at the time, who was the appellee, Dr. Floro, performed an autopsy on the remains, and after that, Ms. Lovett, her mother, signed a release to have the remains sent to a funeral home of her choosing. After that, Dr. Floro remitted a small portion of Ms. Lovett's remains to the funeral home, consisting of the bones of her legs and feet. Those remains were buried during a funeral service held for Ms. Lovett. Counsel, hi, this is Robert Luck. I know I'm aware of the facts, so you don't need to repeat them, and they are horrific, as alleged. My confusion is about the intersection between Florida common law and the statutory scheme, so I want to ask you a few questions about that, okay? Sure. Okay, so in general, I'm asking in general, not specific to this case, if there is a statute that is in contravention of a common law right or duty, which in Florida takes precedence, the statute or the common law right? Typically, the statute will control. Okay, and that's my understanding as well. So here, let's take as a given that at least since 1950, there was a common law right and duty that the loved ones of the deceased had a property interest in the remains of their loved ones. Let's take that as a given. At least in 1984, the Florida legislature passed the Medical Examiner Act, and we'll talk about the 1984 version first, okay? Okay. And in 1984, what I understand the statute to read, and I'm referring to 406.11 subsection 1, that the medical examiner of the district shall determine the cause of death and shall make and have performed such examinations, investigations, and autopsies as he or she shall be necessary when a person dies of a state of criminal violence. You agree that in 1984, the statute read that way, correct? That's correct. And then subsection 2 reiterates that the medical examiner has the authority in any of the cases above, including the ones that we're talking about there, to perform or to have performed whatever autopsy or laboratory examination he or she deems necessary and in the public interest, correct? That's correct. To the extent that that conflicts with the common law right, with the right of loved ones, you would agree with me that at least in 1984 until the statute is amended in 1998, that that statute would take precedence over the common law right, correct? Yes, that's correct. Okay. So if it is alleged or can be read from the plausible allegations in the complaint that a cause of death had not yet been determined and that the body was kept as necessary by the medical examiners and that at least through 2000, or at least when it was transferred to the University of Florida, examinations were continued to have been done, that they were done pursuant to this statute. So on that point, your honor, I would disagree. So what the complaint alleges, and to your point that when a statute conflicts with the common law, it only authorizes the medical examiner's act in accordance with what the statute says. And what the statute allows them to do is perform tests in furtherance of identifying the remains or in determining the cause of death, as you said. Counsel, doesn't the complaint allege that in 1984, Dr. Floro was not able to determine cause of death because of decomposition? Correct. He was not able to determine the exact cause of death. However, he was able to determine that the cause of death was a homicide. He was able to determine the manner of death, but not the cause, right? He couldn't determine the exact cause of death. Well, so isn't he authorized to perform and to hold on to whatever he needs to in order to do the investigation, examination, and autopsies as he deems necessary? Well, and if that was what he was performing, we would have a different case. But what the complaint alleges is that he actually held onto the remains until long after that point where that duty was either done or he had given up. Obviously, by this point in time, Ms. Lovett had already had a death certificate issued. Where does it allege that he had given up? As I understand it, when the bodies transfer to the University of Florida, more examinations are still done. So the only examination that the University of Florida performed was an examination to identify whose remains they belonged to. There was no examination to determine the cause of death in the osteological report. So what the complaint actually alleges is that that examination was completely unnecessary because Dr. Floro, at least at the time that he received the remains, knew who the remains belonged to and had already performed his autopsy of the body. Whether it's subject – the problem is, though, or a problem appears to be – and then I want to talk about another provision of the statute. The statute doesn't say as is objectively necessary. What it says is as he shall deem necessary, meaning in the subjective opinion of the medical examiner, right? And from the complaint, even if that's the case, we don't have on the face of the complaint what Dr. Floro's subjective intentions were. Isn't that a pleading flaw? In other words, if we're looking at the plausible allegations, the plausible allegations are he did an autopsy, he kept the remains, he was unable to tell the cause of death, and at least through the time that he transferred it to UF, they were still doing investigations. I mean, isn't the plausible allegation there, the plausible inferences from the complaint, and any reasonable inference that he deemed it necessary to continue the investigation? Well, what the complaint specifically alleges, if you look at paragraph 30 and in each of the paragraphs dealing with the – that are alleging that the elements of the cause of action against each medical examiner is that doing all their actions served no lawful purpose. So if we were to speculate that Dr. Floro was actually engaged in a 10-year process of identifying the cause of death, then that actually goes directly in contradiction. But the problem is under Iqbal, you can't just say it's not lawful and then take that as true. I mean, the whole point of Iqbal is there has to be some plausible allegation supporting that. And certainly on legal conclusions, we don't just accept those as true at the complaint stage, right? Well, and it's not necessarily a legal conclusion. It's just that there was – there's a list of lawful purposes that a person can keep a body for. One of them is determining the cause of death. And we allege that that was not the reason the body was kept and the allegation – And to identify, right? And to identify, correct. And if the keep shall determine the cause of death and shall make or have performed such examinations, investigations, and autopsies as he shall deem necessary, why, if he is sending the body there, is it not plausible that he – and there's no allegation to the contrary – that this was a necessary part of – or he deemed necessary a part of the investigation? Well, it's not plausible because no action was taken on it by Dr. Floro for a period of eight years, other than to send it to the University of Florida eight years after it to identify whose remains they belonged to. He did nothing with the bones for all that time. Okay. I want to look at another portion of the statute. This is – or of the Medical Examiner Act. This is 406.13 and the last sentence. That last sentence states, any evidence or specimen coming into the possession of said medical examiner in connection with any investigation or autopsy may be retained by the medical examiner or be delivered to one of law enforcement agencies assigned to the investigation. Doesn't that authorize where there's evidence derived from an autopsy for the medical examiner to retain that? So if it meets the narrow criteria of 406.13, first we would argue – and you're probably getting this, Your Honor – that in 1998 when the amendment was passed, the amendment modified this provision as it pertained to the body. And we'll get there. I'm only talking about 1984 to 1998 at this point. And so past that, there's two other things that need to be required for subsection 13 to authorize the medical examiner's action. First, they have to be in possession of the remains during an investigation or autopsy. As I discussed before, the complaint alleges that any investigation into Ms. Lovett's death and the autopsy had already been performed. So that criteria is not met. One second, though. It's a specimen coming into possession in connection with the autopsy. Certainly the remains that he had were possessed in connection with the autopsy. That's correct for Dr. Floro's case. With the others, the autopsy had been long performed when they came into possession. But the possession is continuous. In other words, it's possessed, and the statute authorizes that possession. How is it depossessed? I get it if they had let it go to the family and then took it back. That would be something different. But if they possessed it in connection with it, why does the statute not authorize that? Then what the statute also says is that it allows them to either retain the remains by the medical examiner or have them delivered to one of the law enforcement officers assigned to the investigation. Dr. Floro did neither of those things. He gave it to the U.S. Health Laboratory, and they stored it for an additional length of period of time where it was out of the medical examiner's custody, and also it wasn't in law enforcement's custody that was connected to the case. So even if this provision applies, the black letter, the provision, was not followed in this case by any of the medical examiners. Two minutes remaining. What about, though, if you go to subsection 1 of the 1984 statute and subsection 2, which states not only that the medical examiner shall perform, but that he can have performed? So the sentence reads,  and shall make or have performed such examinations, investigations, or autopsies. Why is he not allowed to bring in someone else, specifically a professor at universities, in order to have performed these exact things he's authorized to do? Well, and specifically the only examination done was in 1992 to identify the remains. Even if that were authorized under the provision that you referenced, he allowed those remains to remain at the University of Florida for eight years until 2000. So this was not a situation where he just sent it in for a test that needed to be done in accordance with the autopsy that had already been long completed. This was a situation where he sent them to the University of Florida to perform a test. He got the test results back in 1992 and then allowed them to retain it for an additional eight years until they were given back to the medical examiner's office. But still, if he's allowed to have these things performed and is allowed to retain, how can we say that this right, that sort of general common law right, was clearly established such that a medical examiner would have no discretion and would constitutionally, absolutely without doubt, have violated procedural due process rights, again, assuming those rights existed? And, Your Honor, I see that my time is expiring, but the clearly established prong only applies to the claim against Dr. Floro. And the position we take is that the common law controls to the extent, only to the extent that it's not modified by statute. Dr. Floro did not comply with the letter of the statute. He furnished it to a party that he wasn't supposed to under subsection 13. Under subsection 11, he kept the body and furnished it long after the investigation into the cause of death and the homicide was concluded, meaning there was no lawful purpose for him to be taking out these activities. If this at all occurred in a very short period of time after the death, where action was taken, that would be one thing. But under the facts alleged here, it seems like they just kept the body and it did not have any intention or made any effort to pursuing the goals that allow him to keep the body under the statute. Where does the, Chief, is it okay if I have another second or two? Sure, take whatever time you want. I appreciate it. Where does it say in the complaint, or where does it allege in the complaint, that the investigation is concluded and the cause of death had been determined definitively such that the investigation was closed? I understand it was alleged that someone was arrested and that person was found no probable cause and speedy trial expired. But where does it say that the investigation concluded? So what it alleges is that providing the remains to the University of Florida, this is paragraph 30, did not further any law enforcement goals because there was no investigation or prosecution for Ms. Lovett's murder at that time. Just because there's no investigation or murder at the time doesn't mean the investigation is closed. A murder is a murder forever. Well, that's correct, but what the complaint alleges is that there was no legitimate law enforcement purposes for them to hold onto the remains. Thank you, Counsel. Thanks. Okay. Next up is Ms. Pinkstaff, who is the attorney for several of the defendants. Ms. Pinkstaff. Yes, Your Honor. May it please the Court. My name is Tiffany Pinkstaff, and I'm with the Office of General Counsel for the City of Jacksonville. We represent the Medical Examiner's Office, Dr. Floro, Dr. Arruzza, and Dr. Rao. The appellants have not and cannot allege viable procedural due process claims under 1983 for three reasons. First, the individual medical examiners are entitled to qualified immunity. On the four corners of the complaint, they were acting within their discretionary authority in receiving and keeping part of Ms. Lovett's remains. Second, appellants cannot allege a constitutional violation or a clearly established right. In fact, this is a case of first impression in the 11th Circuit. Third, appellants have post-deprivation remedies. First, it's undisputed that the remains were, in fact, returned to the appellants by Dr. Rao. And second, any damages suffered can be redressed in the state tort claim for outrageous infliction of emotional distress. There was no pre-deprivation notice requirement bringing this matter outside of the Parrott-Hudson doctrine, and this Court has already determined and written House v. DeKalb County that sovereign immunity law does not, in and of itself, deny procedural due process. Counsel, I want to talk about the clearly established wrong, and then feel free afterwards to talk about any of the other issues that you just raised. But the clearly established law is the statute. It seems clear to me that in Florida, family members have a right to the remains of their loved ones, and that's in any number of cases. And even the main case that you all argue about, the 2001 case from the Florida Supreme Court, dealt with a very similar factual situation of the law enforcement or the medical examiner's office releasing a body or burying a body without notice to the family after the investigation concluded. But here, if there's a violation of the statute, how is that not clearly established? Well, the violation of the statute would be on the premise that each time the remains came back into the medical examiner's office, it was a new retention. Why is that not a fair assumption when under subsection 13, again, this is the pre-amendment subsection 13, the authorization to retain is by the medical examiner or law enforcement? No one else is listed. Right, but the possession of the remains as they were transferred for purposes of either forensic pathology analysis or forensic anthropology analysis... But isn't that the problem on the complaint stage? That may be true, by the way, but at the complaint stage, all we know, at least after 1992, is that no investigation was done. And especially when it was transferred to Florida Gulf Coast, there's no allegation that I read in the complaint that anything was done. And again, there's also no allegation that the investigation had been concluded. Right. That's not good for you, right? Well, I think that is good for us because, as it says in 406.13, the report is to be... Once the cause of death is established by the medical examiner, they're supposed to provide that in writing to the state's attorney's office. And again, there is no allegation that that ever occurred. Well, the report is separate from any other part of it of the keeping the remains and what needs to be done. But there's only allowed to conduct... As I understand it, there's only allowed to conduct examinations, investigations, and autopsies in order to determine cause of death and identity and manner of death. If those things are determined and the investigation is closed with regard to that, then how can it be deemed necessary to keep the body? Well, that's true, Your Honour, but in fact, the body ultimately was turned over to the family members by Dr. Rao. Right, but at some point when it's closed, when there's no longer an investigatory purpose for it, that's a 16-year or 20-year retention. I understand it was eventually done, but isn't there a cause of action or a... Let me put it this way. Isn't there a violation of the statute for those 20 years? Again, Your Honour, that's presuming that there was more than one retention, and it is our position that there was only one retention. But how can the... What authorizes a law... What authorizes a medical examiner to release a body to another... to a university in any sense and in a specific sense here? Well, Your Honour, under 40611, it states that such examinations, investigations, and autopsies, as he or she shall deem necessary or as shall be requested by the state attorney, and then it states later on in 2A, the district medical examiner shall have the authority in any case to perform or have performed. To perform or have performed. Okay, so in 1992, an investigation was performed by U.S. That's the only one that's alleged by anyone else doing so. How is the Florida Gulf Coast transfer, where there's no allegation that anyone... that any investigation had been performed, and where it's alleged that the investigation was concluded and there was nothing else to do at that point, how is that transfer and then back authorized by statute? I don't think that they did allege that the investigation was concluded. I just... I asked... your opposing counsel, and he specifically pointed... showed me to question 30, or paragraph 30, where he said no investigation or prosecution of Ms. Leavitt's murder at the time, that there was nothing going on. And there's an allegation that it was not transferred for any lawful purpose. And to Your Honour's point, under Iqbal, there does need to be more specificity as to the allegation. Well, let's assume for the moment I think there is enough specificity. Where is this statute, does it authorize what was done here? And if it doesn't, why is that not clearly established? Well, Your Honour, I think that getting to the clearly established, you know, it means that at the time of the medical examiner's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing was unlawful. Right, and certainly in the common law context where duties are developed by case law, we look to case law and we look at specific examples. But where there's a statute directly on point, how is a violation of that statutory duty not clearly established? Well, even after the 1998 amendment that required the notification of and the approval by the next of kin, if the ME keeps a body part for research or other purposes, the ME is still allowed to keep a body part for purposes of identification or determination of cause or manner of death. I understand that, but where the investigation is over, where the body's been identified, it clearly has, and where, again, it's alleged that there's no lawful purpose and there's no open investigation by anybody at that time, how is there allowed to be retention? And I'm talking about under the 84 statute. And how are you allowed to give it to another person other than law enforcement? Yara, I think there's a difference between the statutory requirement of notice and whether or not there is a constitutionally protected property right. Well, I'm not talking about notice even. Forget notice. I'm talking about retaining somebody else's property. I understand, but I don't think that there's been a... I think what's not clearly established is the property right portion of this. I think that's a tough sell under Florida law, as I read the case law, about what the duty is. Now, where I would agree with you is if that duty is contravened by the Medical Examiner Act, then the Medical Examiner Act clearly controls. But absent authority under the Medical Examiner Act, I don't see how it's not clearly established in Florida that there's a constitutionally protected interest of loved ones in the remains of the deceased. Again, Your Honor, I think there's a difference between what the case law was, say, prior to 2001, the Parker v. Pleasant case, where, you know, in State v. Powell in 1986, the Florida Supreme Court stated that all authorities generally agree that the next of kin have no property right in the remains of a decedent. So while there may be a tort claim prior to 2001, or even, for that matter, after 2001, regarding a right to bury your next of kin, you know, to take possession of the remains and bury your next of kin, that's not the same as a constitutionally protected property right. Counsel, I'm looking at page 987 of Crocker. Quote, Florida case law has long recognized the right to possess a loved one's remains for the purpose of burial or other appropriate disposition, citing Kirksey from 1950. Right, the right to possess, but that's different than a constitutionally protected property right. Well, but those constitutionally protected property rights are only defined by state law. So if state law defines the right to possess one's body, one to possess the remains of a loved one, then that is a constitutionally protected right that requires due process of law. Now, we can talk about whether post-deprivation remedies are appropriate or not, but I'm having trouble understanding how that right to possess was not established. Well, it was not clearly established, and I have not conceded the point that it's even clearly established after Crocker v. Pleasant, but certainly at the time of Crocker v. Pleasant, it was not a clearly established right. Where the Florida Supreme Court says it's been long recognized the right to possess, it's not clearly established as pre-existing that case? No, Your Honor, again, I think there's a difference between the right to possess for purposes of burial and a constitutionally protected property right. And that's actually been recognized by other circuits, including the Ninth Circuit, where they're talking about the fact that, yes, there may be this long precedent of case law where it's been determined that if, in fact, someone does something inappropriate with a Mexican decedent's remains, that could give rise to a tort claim. But not until a case comes out saying that it's actually a constitutionally protected right under federal law does it convert to a property right. Anything else, Ms. Bateson? No, sir. All right, we'll hear now from Mr. McKee, attorney for Walsh-Haney. Thank you, Your Honor. I'm Robert McKee. I represent Appalachia, Dr. Heather Walsh-Haney. I'd like to use my time this morning to focus on the district court's decision as it relates to Dr. Walsh-Haney's right to qualified immunity. As Your Honor and members of the court know, the sum total of Dr. Walsh-Haney's involvement in the events that led us here today are threefold. She transferred remains to the medical examiner's office. The remains were already being housed at the University of Florida. She received the remains back from the medical examiner's office. And finally, she transferred the remains back to the medical examiner's office. Now, there's no dispute that Dr. Walsh-Haney was a state actor during each of these events. She was a grad student and a lab manager at UF in 2005. She later obtained employment with Florida Gulf Coast University as a professor. And there's no dispute that Dr. Walsh-Haney was acting under color of law at all times during her involvement in this matter. District court was correct in its determination that based on the allegations set forth in the complaint, Dr. Walsh-Haney is entitled to qualified immunity. There are two essential elements to obtain qualified immunity. Number one was Dr. Walsh-Haney performing a discretionary function when she transferred and received the remains. Stated differently, was Dr. Walsh-Haney performing acts that furthered an official obligation, and did these acts fall within the scope of her authority? If the answer to that question is yes, then the second question is that Dr. Walsh-Haney violated clearly established law when she transferred and received the remains. As the question number one, the discretionary function, as stated earlier, Dr. Walsh-Haney was acting as a repository on behalf of the medical examiner's office of these remains. She's charged with the responsibility for safekeeping these remains. Now, while performing this function, Dr. Walsh-Haney didn't violate any clearly established law. There's no law that was extant at the time of either the transfer, the receipt, or the retransfer of the remains to establish that, look, if you're acting as a repository of human remains, you are legally obligated to obtain permission from the next of kin to store and to keep the remains safe. I don't think you can find any case law to that effect that clearly establishes that, and no statute establishes that. And the big difference... But counsel, assume with me for the moment that loved ones have the right to possess for purposes of burial their family member's remains. If someone interferes with that right, it clearly has been established that that is a violation of Florida tort law, correct? Perhaps Florida tort law, not to conceive that Dr. Walsh-Haney... I understand that. ...is responsible for that. I'm asking you to assume what I've just said to be true. Yes, sir. Okay. So retaining someone's remains is a violation of that right, is it not? It may be, depending on the circumstances. Right. So for us, the key question is, at least in 2000 and I think in 2005 when Dr. Haney gets the remains back at Florida Gulf Coast when she's an assistant professor there, whether it has been clearly established that interference with that right is a constitutionally protected right, or whether that right is a constitutionally protected right, correct? Correct. How does Crocker not... I mean, Crocker is a 1983 case, and it specifically states that there is a right to possess a loved one's remains for purposes of burial or other appropriate disposition. That's correct. One also has to factor in that Dr. Walsh-Haney at this point is acting at the behest of the medical examiner. So if she's an agent of the medical examiner's office, and I know you make that argument, then her rights are endowed only as those authorized by the Medical Examiner Act. What authorizes the medical examiner to transfer remains to her in a case where there is no pending investigation and where cause and manner of death have already been established? I don't know that the cause of death was ever established. Is there any allegation that Dr. Haney was doing any investigation, examination, or autopsy on the remains to establish cause of death? No, sir. Then how is she authorized to have them? She's authorized to have them because the medical examiner has certain rights and obligations under the statute. It's the medical examiner's call. But the medical examiner can't keep remains forever. It only can act as authorized by the statute. I'm asking you to show me where in the statute it authorized the medical examiner after an arrest has been made, after the person has been released, after the remains have sat for over 20 years and where no active investigation is being done because nothing was done with the remains, where that authorizes Dr. Haney to take custody of them and retain them for what looks like 11 or so years. I think the question is, was there any law extent that would alert Dr. Walsh Haney when these remains were transferred to her that she had an obligation to communicate with the next of kin, to obtain permission from the next of kin to retain these remains on behalf of the medical examiner? The medical examiner may have had that obligation under the latest revision of the statute, but Dr. Haney wasn't a medical examiner. So I think that's the biggest... The problem is you seem to be wanting to have it both ways. You want her to be an agent of the state through the medical examiner's office and acting on their behalf, but then not be subject to any of their obligations. That seems anomalous to me. Well, it's not be subject to any of the obligations of the medical examiner, but certainly as to the obligation to notify the next of kin and to get permission from the next of kin to continue to possess these remains, the statute doesn't say the medical examiner or any university official with whom the medical examiner has a relationship to curate or act as a repository for these remains. Counsel, your time has expired. Thank you, sir. Thank you, Your Honor. Thank you, members of the panel. This is Jesse Wilkerson, Counsel for the Appellants. May it please the Court? Counsel, could you speak to the issue of whether you have an adequate post-deprivation remedy? Your Honor, there are two points to that issue. The first one is that for a case like this where we are dealing with the actions of APEX officials for a county office, the existence of an adequate state remedy should not have any bearing on a due process claim. The Supreme Court in the Zinnerman case that we cited laid that out, that the doctrine in focusing on adequate state remedies is an extension of the Parrott-Hudson doctrine, which arises out of unauthorized or random deprivations of property, and the paradigm for that is an example where a corrections officer destroys an inmate's mail or stamps, and the state has no way to anticipate that or provide pre-deprivation process. Here, the medical examiners were the ones who acted or authorized action, and they had ample opportunity to provide Mr. Lovett and Ms. Lukoski with pre-deprivation notice. The second issue is that the way that Florida law is laid out... Counsel, how does that square with our Tiny vs. Shores case, which related where we applied the Parrott-Hudson doctrine to the sheriff and his actions in seizing property? I mean, sheriff certainly is an APEX person. I don't think that we've limited, at least our case law, has limited the Parrott-Hudson doctrine in that way to APEX officials. The question seems to be whether it's feasible or implausible to have the pre-deprivation remedy, not the nature of the official, right? Right, and that's true. In this case, the medical examiner is the only one who is charged with performing these duties under Florida law. They're the only official that is at issue here. So we have to look at it from the official, from the perspective of the entity that's being sued, in this case the medical examiners in their office. Isn't there a review commission for the medical examiners? In other words, if there's a decision that's made by a medical examiner, it can be appealed to as a commission, can it not? That is true. Just like someone who works for a municipality that is licensed in some way, they can have their medical examiners duty under the statute taken from them or changed. But in this case, the medical examiner's station wasn't reviewed and there was no one within the county or the city that was able to review her decisions or their decisions. The second reason why the adequate state remedy is not a bar to our claim is that there is no adequate state remedy here. Under Florida law, the impact rule prevents the plaintiff from recovering damages for emotional distress, which is the only damages here, and that has been modified slightly for dead bodies. But what it essentially requires, and this was outlined in the Kirksey case, is that the standard of conduct for obtaining relief is essentially the same standard of conduct to obtain punitive damages or exemplary damages. Counsel, I'm looking at the Halpern versus Carrera funeral case from the 4th DCA, which states, quote, tortious interference with rights involving dead human bodies is excluded from the impact rule, which normally governs causes of action for intentional infliction of emotional distress, right? And so what courts have said is that the exclusion is there, but it needs to be of the standard set forth in Kirksey. And in the Kirk or the Orange County case, they laid this out that you need to either make out the tort of outrage or the conduct of the medical examiners needs to be so, basically, so intentional or outrageous that it justifies punitive damages. And they lay out a number of cases where bodies… How is the heightened evidentiary standard a non-post deprivation remedy? I mean, we've even said that just because someone is sovereignly immune under state law does not mean that it's not a parent Hudson remedy, right? So, well, that's correct. But this is not dealing with government immunity. This is dealing with adding an extra element that is not necessary to prove a deprivation of a constitutional right. The elements of deprivation of a constitutional right are simply that there is no… that you have a state interest, that there's state action, and that there was unlawful deprivation. There's no element of… Counsel, but that was true in McKinney v. Pate where we said that the Florida statutory certiorari or a constitutional certiorari principle, certiorari requires a very high standard to get, and that was sufficient. I don't see how the burden of the state remedy affects its availability unless it's completely not available. Well, in the case of the medical examiner or the office itself, it's not available due to the sovereign immunity statute. But in the case of the individuals, there's a distinction. In certiorari, there is a very heightened legal standard. It's essentially a standard of proof in order to obtain relief. This is a heightened factual standard where basically you have to have conduct that is considered outrageous. And so you have this very wide range of cases because the tort of outrageous infliction of emotional distress is very difficult to prove factually where you do in fact have a constitutional deprivation. It is intentional, but the plaintiff cannot recover because whatever the act was was not so outrageous that it meets the high element of punitive damages. So the difference between this case and those cases is this is not a new legal standard or a difficult standard, but a factual element that must be present that is not necessary to show constitutional deprivation. I'd like to speak briefly regarding the discussion regarding the medical examiners and the statute, the 1998 statute. And I concede that our claim against Defendant Floro is probably the weakest among the ones we've brought. But the 1998 statute specifically prohibits retaining or furnishing body parts.  So long as it's not a page-length sentence, counsel. Sure. The statute prohibits retaining and furnishing. It does not prohibit taking possession of. So the argument that the other medical examiners are grandfathered in is contrary to the plain reading of the statute because retention is keeping. It's undisputed that every person we've sued against Floro has kept and retained. Counsel. Counsel. That's two sentences. We'll have to hold you to your time. We've got another case. Take that case under submission.